### In re MARCUS et al.

District Court, W. D. Pennsylvania. April 21, 1927.

#### No. 11456.

Jury ⊜13(21)—Proceeding for contempt by receiver against bankrupts for removing and converting merchandise of estate held civil; "civil contempt" (Clayton Act, §§ 21, 22 [28 USCA §§ 386, 387]).

Proceedings for contempt by the receiver for bankrupts, charging them with surreptitiously removing and converting to their own use large quantities of merchandise belonging to their estate, and asking that they be ordered to return it or pay its value, *held* for a civil contempt, not within the purview of Clayton Act, §§ 21, 22 (28 USCA §§ 386, 387 [Comp. St. §§ 1245a, 1245b]), providing for jury trial for criminal contempts, but remedial and within the jurisdiction of the court of bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Civil Contempt.]

In Bankruptcy. In the matter of Jacob Marcus and Benjamin Marcus, partners trading as Marcus Bros., bankrupts. Proceeding for contempt by the Pennsylvania Trust Company, receiver and later trustee, against Jacob Marcus and Benjamin Marcus, respondents adjudged in contempt.

See, also, 20 F.(2d) 454; 21 F.(2d) 480.

L. C. Barton, of Pittsburgh, Pa., for Marcus Bros.

T. M. Benner, of Pittsburgh, Pa., for Pennsylvania Trust Co.

F. B. Ingersoll and J. M. Redden, both of Pittsburgh, Pa., for creditors.

SCHOONMAKER, District Judge. The Pennsylvania Trust Company, receiver, filed a petition alleging that the bankrupts, Benjamin Marcus and Jacob Marcus, interfered with the possession of goods and merchandise by the receiver, and that they did clandestinely remove from the possession of the receiver a large amount of merchandise and assets belonging to the estate in the custody of the receiver, with intent to defraud the receiver and the creditors of Marcus Bros., and asking that the said Jacob Marcus and Benjamin Marcus be decreed to return to the receiver the merchandise and moneys so taken by them, or its value, or stand committed until they comply with the order of court.

An issue was raised on this question that was heard before the court without a jury;

the court finding in an opinion filed herein on October 1, 1924, that the respondents, Jacob Marcus and Benjamin Marcus, had clandestinely removed from the possession of the receiver large quantities of merchandise. We thereupon referred the case to Watson B. Adair, referee in bankruptcy, to take further testimony to ascertain and fix the quantity and value of the goods and assets clandestinely removed by the respondents from the possession of the receiver, and to make a report to the court, together with his findings with reference thereto.

Later Marcus Bros. were adjudged bankrupts, and the receiver, Pennsylvania Trust Company, was elected trustee and qualified as trustee, and is now acting as trustee in bankruptcy.

On July 14, 1925, the Pennsylvania Trust Company, as trustee, asked the court to rescind its order of October 1, 1924, in so far as it referred the case to the referee in bankruptcy as special master. This petition was granted, and this order of reference was rescinded. The case then came on for hearing before the court on the 21st day of April, 1927, for the purpose of taking additional testimony, with a view to fixing the quantity and value of the merchandise clandestinely removed by Jacob Marcus and Benjamin Marcus. At this hearing the respondents again raised the question of jurisdiction and demanded a jury trial, urging that this was a criminal contempt proceeding and not a civil proceeding, and that within the provisions of the Clayton Act of October 15, 1914, c. 323, 38 St. L. 738, 739, §§ 21, 22 (28 USCA §§ 386, 387 [Comp. St. §§ 1245a, 1245b]), they were entitled to a jury trial upon their demand. In our opinion, filed herein on October 1, 1924, supra, we considered the question of whether this was a criminal or a civil contempt proceeding. We held that it was a civil contempt proceeding and that the Clayton Act did not apply, further intimating that in our opinion the Clayton Act, in so far as it provided for a jury trial, was unconstitutional. In holding this act to be unconstitutional in its provisions for a jury trial, we were in error, in view of the opinion of the Supreme Court in the case of Michaelson v. U. S., 266 U. S. 42, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451.

That decision, however, does not lead us to change our opinion as to the nature of this proceeding. In fact, we are entirely confirmed in our view that this is a civil contempt proceeding and that the statute has no application, in view of the ruling of the Supreme Court in the Michaelson Case, supra. Mr.

Justice Sutherland. said, on page 65 (45 S. Ct. 19) :

"We think the statute, reasonably construed, relates exclusively to criminal contempts. The act or thing charged must be of such character as also to constitute a crime. Prosecution must be in conformity with the practice in criminal cases."

In the instant case, the facts might justify the criminal contempt proceedings by the United States attorney, but the proceedings here are purely remedial. in their character, and are brought by the receiver in bankruptcy for the purpose of securing the return of property, or its value, that was clandestinely removed from the possession of the receiver. It may only be penal in its consequences if the respondents fail to comply with an order of court requiring the return of the property removed, or its value. We still believe that we have jurisdiction of the instant case and that respondents are not entitled to jury trial.

At the hearing on April 21, 1927, the respondents asked for permission to offer additional testimony upon the issue as to whether or not they had clandestinely removed goods from the possession of the receiver. We permitted the respondents to offer such testimony, and have reviewed the testimony given at this hearing as well as the testimony given at the previous hearing. From a full and careful consideration thereof, we find no reason to change our previous findings in this case, namely, that the respondents have clandestinely removed large quantities of merchandise from the possession of the receiver.

We now find and fix the quantity and value of merchandise so clandestinely removed from the possession of the receiver as follows: Eighteen truck loads of assorted groceries of the average value of $1,500 each, total value $27,000, were clandestinely removed from the possession of the receiver, and delivered by the respondents for their own accounts as follows: Thirteen 3½-ton truck loads to Stein & Sharpe; one truck load to J. Caplan; one truck load to Nathanson & Rosenberg; two truck loads to Wald; and one truck load to Koppel. In addition, merchandise to the value of $4,000 was taken from the possession of the receiver by the respondents and delivered to Ram & Co. Merchandise to the value of $300 was clandestinely taken from the possession of the receiver by the respondents and delivered by the respondents on their account to Huey & Mathews. This makes merchandise to the total value of $31,300, which the respondents clandestinely removed from the possession of the receiver and converted to their own use, and which they will be ordered to return, or its value, to the trustee in bankruptcy.

There is evidence from which we might find that additional items of merchandise and money were taken from the receiver by these respondents for their own use, but the testimony is not sufficient for us to make specific findings. We have no doubt whatever as to the items above enumerated, and the order for their return, or value thereof, will be made.

We may note in the instant case that we have not adopted the measure of proof beyond a reasonable doubt, such as was indicated in the case of Michaelson v. United States, supra, would be required in criminal contempt proceedings; but we have followed the ordinary rule as to measure of proof required in civil cases, being of the opinion that this proceeding is civil in its nature and is to be governed by rules prevailing in equity where civil rules of proof apply. In re Oriel (D. C.) 17 F.(2d) 800, 803.

An order may now be submitted directing the respondents to return to the possession of the trustee in bankruptcy, Pennsylvania Trust Company, the assorted groceries so removed, or pay to the trustee in bankruptcy the value of the same, to-wit, $31,300; this to be done within thirty days from the service of order upon the respondents.