## MARCUS et al. v. PENNSYLVANIA TRUST CO. OF PITTSBURGH.

Circuit Court of Appeals, Third Circuit.
December 7, 1927.

### No. 3636.

**1. Contempt ⬅34—Federal courts have inherent power to punish for contempt.**

Courts of the United States, when vested with jurisdiction over any subject, have the power to punish for contempt, which is inherent in all courts and essential to the administration of justice.

**2. Bankruptcy ⬅114(1)—Surreptitious removal by bankrupts of property after its delivery to receiver is violation of order to deliver and "contempt of court."**

The usual order of a court of bankruptcy on appointment of a receiver, requiring bankrupts to deliver and convey their property to the receiver, impliedly requires them to permit the property, when delivered, to remain in the receiver's possession, and its clandestine removal after delivery is a disobedience of the order and a "contempt of court."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contempt.]

**3. Jury ⬅13(21)—Proceeding for contempt by receiver against bankrupts, for removal and conversion of property, held civil, and defendants not entitled to jury trial (Clayton Act, § 22 [28 USCA § 387]).**

Proceeding for contempt by receiver against bankrupts to require them to return or pay for property surreptitiously removed from his possession is for civil contempt, in which defendants are not entitled to jury trial under Clayton Act, § 22 (28 USCA § 387; Comp. St. § 1245b); order following the petition being remedial and not punitive.

**4. Contempt ⬅61(2)—Court is judge of both facts and law in contempt proceeding.**

In a proceeding for contempt, the court is judge of both facts and law, and technical errors are not prejudicial.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

In the matter of Jacob Marcus and Benjamin Marcus, individually and as partners trading as Marcus Bros., bankrupts. Proceeding for contempt by the Pennsylvania Trust Company of Pittsburgh, receiver, against Jacob Marcus and Benjamin Marcus. From an order adjudging them in contempt, they appeal. Affirmed.

For opinion below, see 21 F.(2d) 483. See, also, 21 F.(2d) 480.

Lowrie C. Barton, of Pittsburgh, Pa., for appellants.

Thomas M. Benner, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This case is another incident in the train of litigation that started with the bankruptcy of Jacob and Benjamin Marcus. For a recital of the doings which led to the decree of the District Court holding the bankrupts guilty of contempt, we refer to the opinion rendered by this court in the intermediate case of Marcus et al. v. United States, 20 F.(2d) 454, and the opinion of the trial court in Re Marcus, 21 F.(2d) 483.

The decree here on review not only had its rise in bankruptcy but was rendered by a bankruptcy court. The first question is whether or not a court of bankruptcy has jurisdiction to entertain a petition and enter a decree for contempt.

The appellants maintain that, as the general jurisdiction of the court is purely statutory, its jurisdiction over contempts is limited by the provisions of the Bankruptcy Act (11 USCA), of which there are but two, namely, section 41b and section 2 (13). 30 Stat. 544; Comp. Stat. §§ 9625, 9586 (11 USCA §§ 11, 69). They say that section 41b did not confer jurisdiction upon the court to enter this decree because that section gives it jurisdiction over matters of con-

tempt only in proceedings on a certificate of a referee, where a person has, "in proceedings before a referee," done one of the things forbidden by section 41a (11 USCA § 69), while the bankrupts' action here was not one of those things. This provision looks like an express statutory extension of the court's inherent contempt jurisdiction over its own orders to orders of a referee. However that may be, we are in accord with the appellants' contention on the facts and hold that the court of bankruptcy in this proceeding for contempt did not have jurisdiction under section 41b of the Bankruptcy Act. Biderman v. Cooper (C. C. A.) 273 F. 683.

[1] Turning to section 2 of the act whereby District Courts of the United States are made courts of bankruptcy with jurisdiction (13) to "enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment," the appellants argue that this jurisdictional provision was not invoked in, nor can it apply to, the instant case because the court did not attempt to enforce obedience to its order by fine or imprisonment as there provided but sought to enforce obedience by commanding the bankrupts to return goods or pay money to the trustee, when the provision does not confer jurisdiction to make such an order. Whatever force there may be in this contention it avails the appellants nothing in view of the settled law that courts of the United States, when called into existence and vested with jurisdiction over any subject, at once become possessed of the power to punish for contempt, which is inherent in all courts and essential to the administration of justice. Ex parte Robinson, 19 Wall. (86 U. S.) 505, 510, 22 L. Ed. 205; In re Debs, 158 U. S. 564, 594, 15 S. Ct. 900, 30 L. Ed. 1092; Michaelson v. United States, 266 U. S. 42, 65, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451; Boyd v. Glucklich, 116 F. (C. C. A. 8th), 131; Kelton v. United States (C. C. A.) 294 F. 491, 493. And this is equally true of courts of bankruptcy. In re Kahn (C. C. A.) 204 F. 581, 582; Biderman v. Cooper (C. C. A.) 273 F. 683, 684. Unless divested or arrested by some controlling circumstance, the court of bankruptcy had jurisdiction in this case.

[2] The appellants, however, insist there was such a circumstance, in that there was no previous order of the bankruptcy court that the bankrupts could disobey and, accordingly, no order on which to base the decree imposing punishment for contempt.

The order on which the corporate trustee, by its petition, based this proceeding for contempt is the court's order made at the beginning of the bankruptcy proceeding appointing it receiver and directing the bankrupts "to deliver and convey" their property to the receiver. Continuing, the petitioning trustee charged that at the time it took possession as receiver, and at other times, the bankrupts, then in its employ, "well knowing said order of this court, did clandestinely remove large amounts of merchandise and assets from the custody of the receiver without the knowledge of the receiver, and with intent to defraud the receiver and the creditors of the said alleged bankrupts."

The bankrupts contend that the only part of this order directed to them was that which required them to deliver and convey their property to the receiver and that they obeyed it by making delivery. To the charge that they clandestinely removed goods so delivered they reply that, if true, it might amount to larceny or interference with the possession of the receiver's assets but could not be disobedience of the court's order.

Implicit in the order upon the bankrupts to deliver and convey their property to the receiver was the mandate that they permit their property when delivered to remain in its possession, for delivery followed by immediate withdrawal is no delivery at all. Delivery of property in the sense of the order means surrender of property. To give with one hand and take back with the other and call it obeying the order to deliver was sheer artifice. The court entered the decree for contempt against the bankrupts on a finding that they had, with intent to defraud the estate, clandestinely removed from the custody and possession of the receiver property which under a previous order they had delivered to the receiver for care and management pending the outcome of the bankruptcy proceeding. Clearly their action amounted to interference with property in the custody of the court of bankruptcy for which that court had jurisdiction to impose punishment. It was not necessary that the court should in the previous order specifically command the bankrupts not to take back property which they had just delivered to its receiver, for no rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court and cannot be disturbed without leave of the court, and that if any person within its jurisdiction, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court and is liable to punishment therefor. In re Tyler, 149 U. S. 164, 181, 13 S.

Ct. 785, 37 L. Ed. 689; In re Dialogue (D. C.) 215 F. 462, 464.

[3] The bankrupts' next line of defense is that, if what they did was to interfere with the receiver's possession of property of the bankrupt estate, it was interference with the court's possession, and, if contempt at all, it was contempt of the court's authority, and therefore criminal contempt, and being criminal, the bankrupts (falling back to a still further line of defense) next claim they were entitled under the Clayton Act to trial by jury. 38 Stat. 738; section 387, tit. 28, U. S. Code (28 USCA § 387; Comp. St. § 1245b).

To avoid a hurried conclusion from the bankrupts' premises, we must inquire whether the order on appeal is indeed for criminal contempt. Conceivably the thing done by the bankrupts might have been criminal (Marcus v. United States [C. C. A.] 20 F. [2d] 454), but that would not necessarily make the contempt proceeding and the decree for contempt criminal. They might be civil, according to what the court did and what it intended. Realizing that it is "not always * * * easy to classify a particular act as belonging to either one of these two classes," and that "it may partake of the characteristics of both" (Bessette v. Conkey, 194 U. S. 329, 24 S. Ct. 665, 48 L. Ed. 997), and recognizing also that in every decree for contempt, whether civil or criminal, punishment is involved, the Supreme Court has made clear that it is not the fact of punishment but rather its character and purpose that serves to distinguish between the two classes of cases. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 441–443, 31 S. Ct. 492, 498 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874); In re Kahn (C. C. A.) 204 F. 581, 582; Biderman v. Cooper (C. C. A.) 273 F. 683, 684. Applying this settled law to the instant case, it is evident that the purpose of the court in entering the decree for contempt, commanding the bankrupts to deliver to their trustee "assorted groceries so clandestinely removed, or in lieu thereof, shall pay to the said trustee the sum of $31,300," was not punitive and not made to vindicate the authority of the court but was remedial and made to restore the abstracted property or its money equivalent to the bankrupt estate. We think, therefore,

23 F.(2d)—20

the decree plainly falls within the definition of civil contempt.

On this holding the bankrupts' contention that under the Clayton Act they are entitled to trial by jury fails under authority of Michaelson v. United States, 266 U. S. 42, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451.

[4] The bankrupts next assign error in the court's ruling on a matter of evidence. The witness Dobkin was asked by the bankrupts' attorney whether or not he had a conversation with a man named Baskin in which he told Baskin that he was going to send this fool to jail, meaning one of the bankrupts. The witness answered, "No." Later, the bankrupts put Baskin on the stand and their attorney, claiming that he had laid grounds for contradiction, proposed to prove by the witness the conversation which Dobkin had denied, as showing bias and prejudice of the witness Dobkin. The court, remarking that the matter was "rather collateral," rejected the offer.

This proceeding in contempt was, in truth, an inquiry instituted and prosecuted by the court within what has been from time immemorial the special function of courts to determine the offense of contempt. Kelton v. United States (C. C. A.) 294 F. 491, 493. The court was judge of both the facts and the law. If its ruling was technically erroneous, we cannot say—indeed we do not think—it was prejudicial.

And, finally, we are satisfied that there is ample evidence to sustain the findings and decree of the court and that it is not void by reason of indefiniteness.

The decree is affirmed.